Good morning everyone. Once again I'm delighted to be sitting here in Portland with my amazing colleagues, Judges Forrest and Song. The cases will be called in the order listed on the docket. The first case is United States v. Martinez. Counsel for Appellant, please approach and proceed. Good morning and may it please the Court. Sam Macumber on behalf of Mr. Johnny Lee Martinez. I'm hoping to save one minute for rebuttal and I'll focus my time on the constructive denial of counsel and can address the two sentencing issues if the Court has questions. All right. District courts cannot skip to the end and place likely outcome ahead of the Sixth Amendment right to counsel. Here the district court abused its discretion when it did not listen to Mr. Martinez's description of the lack of communication between him and counsel, which had devolved to the point where Mr. Martinez was calling other attorneys for advice. That is the crux of this case. The breakdown in communication between Mr. Martinez and his attorney that creates constructive denial of counsel. It is not, as the district court noted, about the hearing's complexity and it is not, as the government noted, about the attorney's competence. Instead, it is about the lack of communication and the district court's pivot to outcome instead of inquiry. So, counsel, could you point us in the record to where your client notified the court that there was an irreconcilable difference with his counsel? At Mr. Martinez's first opportunity on page 43 of the record, the first chance that he had to speak to the court, he noted three red flags about the breakdown in communication. First was the, quote, lack of communication. Second was, I'm asking questions and there's no answers for them. And third was that he was reaching out to the Federal Defender's Office and had been getting answers from them instead. Those three red flags showed the court that there was a breakdown in communication. Well, but so what case do you have that says a breakdown in communications per se is grounds for a denial of counsel claim? It's not just the breakdown per se, Your Honor. It's both the breakdown and the lack of inquiry. So after those three red flags, the court should have followed up. Well, what case says that if a defendant says that there's a lack of communication and there's no indication of irreconcilable differences that the court must follow up? What case says that? In Adelzo-Gonzalez, the court said a serious breach of trust and significant breakdown in communication that substantially interfered with the attorney-client relationship. Right. Is that shown here? Yes, Your Honor. Okay. What do we do with, I think that he does say that. He says that I'm not getting communication from my lawyer. But we also have in the record that the district court was aware of a statement from the lawyer saying I've maintained communication with this client. Correct, Your Honor. And maintained communication is not the standard. The standard is trust and substantive communication because communication is a two-way street. Isn't there sort of a conflict in the evidence that the district court would resolve who I'm going to believe here in terms of whether the lawyer and the client are still interacting with each other and working on this case? And that is where the district court failed to inquire and ask the client, can you trust your attorney? And can this conflict be resolved? So when the district court asked the attorney, can this be resolved, he gave a qualified answer and said, I think so. But then the district court did not also ask Mr. Martinez and ask whether this can be resolved. So my recollection of that transcript is it goes just how you described, and then sort of at the end of this back and forth, the judge gives the defendant an opportunity to say anything more. And basically the defendant just says, I think it's time for a change. So what, I mean, is your position that the judge had to do more than give the defendant an opportunity to say whatever you wanted to say and had to ask directed questions? In part, yes, Your Honor. The district court knows the law. Mr. Martinez does not know the law. Mr. Martinez does not need to say magic words. So when he raises the lack of communication, the district court should ask, and this is again from Adelzo Gonzalez, specific and targeted questions to understand the breakdown. Additionally, I think Mr. Martinez said more than what Your Honor just noted. He also says, when I ask, this is later in the transcript on page 48, when I ask my lawyer questions and stuff like what's going on in this case or what can we do different, his answer is it's just a weird case. And that shows the unsatisfaction and the lack of communication between Mr. Martinez and his attorney saying it's a weird case is not an answer to his question about what's going on. Is it appropriate for a district court in this situation to base a decision in part on their understanding of a particular lawyer and their reputation and the court's experience with that lawyer in the past, even if the specifics of that don't show up in the record? I think it's appropriate for the court to consider it. It's relevant but not dispositive. So here the district court can consider his questions to counsel that said that he was maintaining contact, but maintaining contact is not the gold standard. The standard also needs to consider Mr. Martinez' perspective of the relationship. Counsel, what's our standard of review here? Abusive discretion, Your Honor. And under that abusive discretion review, I think the error here is that the district court made its decision without sufficient support on the record. So it seems to me that sort of the linchpin on this issue is our statement in Velazquez that the failure to conduct an inquiry isn't necessarily an abusive discretion if the district court had sufficient information to resolve the motion. So your position has to be the court just didn't have sufficient information. But from hearing your argument, I think you're saying the court didn't have sufficient information because it didn't ask enough questions. Because it did not listen to Mr. Martinez' statements and then ask follow-up questions. How do we know the court didn't listen? Because the court went directly from Mr. Martinez' statements about the lack of communication to asking counsel if he maintained contact. And maintained contact is not the standard. Indicate that the court listened and then sort of turned to the lawyer and said, what do you have to say about this issue that your client has just raised? I think the court could have done two things there. I think it could have granted new counsel immediately and said, I don't think anyone would have questioned that moment where if after Mr. Martinez' statements, the court had granted the motion for new counsel. So that's the first thing the court could have done. The second thing it could have done is asked Mr. Martinez' follow-up questions like, do you trust your counsel to advocate for you and can you repair the relationship? And those are questions that the court asked of the attorney but not of Mr. Martinez. How are we supposed to do it? I mean, I don't think our case would stand for the proposition that anytime someone's dissatisfied with their court appointing a public defender, dissatisfied with the representation, they're entitled to new counsel. So how are we supposed to distinguish between just not happy with the results that they're producing and when the law may be tough versus the kind of breakdown in trust that you're talking about? Mr. Martinez is not raising dissatisfaction with his attorney's performance. He's talking about a breakdown in communication. And we know that. I think the court is referring to a quote that Mr. Martinez had later in the argument where he talks about they keep putting me on probation. And I think that quote needs to have a little context and content. The content is that he's talking about, Mr. Martinez is talking about continued supervision after the court brings it up. So the court pivoted from communication to outcome and Mr. Martinez followed the court's pivot. Second is the content of that statement. Mr. Martinez did not need to say magic words. He just needed to express his lack of trust in his advocate. And he did so. He wanted an advocate to, on his behalf, argue for ending supervision. Instead, his advocate was doing what probation wanted and not answering. Did he say he lacked trust or that he wasn't communicating? Lacks communication. Lacks communication. Did he say that there was a conflict? Mr. Martinez did not use the magic word conflict, no. He said there was a lack of communication. That lack of communication, however, shows the constructive denial of counsel and the trust part is feeling like he had an advocate who would ask for what he was looking for or at least answer his questions about why that was not the appropriate path to take. Did counsel, in fact, argue against supervised release? Yes, and that's not relevant here at the ex parte hearing phase. That happened later and it happened after the court, at this hearing, essentially promised Mr. Martinez that counsel would do so. And I think that needs to come in the broader context that Mr. Martinez is making a reasonable request. He's not a repeat, he's not making a repeat request for no counsel. It's not on the eve of trial. He's worked for his attorney for 10 years and decided that that time does not equal trust. There's been a breakdown and he wants new counsel. And if it's okay with the court, I will stay the rest of my time. Thank you, counsel. We'll hear from the government. Chris Atwood for the United States. I might please the court. This court should affirm the district court's denial of the defendant's request for new counsel because all three factors weigh against appointing new counsel. As to the first inquiry, as the court's noted,  part of that is that the court obtained sufficient information to make an informed decision. And the court had that in this case. He held a hearing, the court held a hearing for the sole purpose of examining this issue. He questioned the attorney, the defendant's attorney. He had the defendant's sworn affidavit before him that had information relevant to this that indicated that they had had numerous communications, meetings, and they had agreed on a course of action. And then the court also provided the defendant with an opportunity to voice his complaints. So going back to the sort of adequate information question, it seems to me, I mean, Judge Windmill is a long-serving judge. He's going to know the community and know the lawyers. And I expect that he is looking at this situation and making this decision based on a whole lot of institutional knowledge that he has that isn't showing in the record. And what do we do with that in terms of – because if I assume that that isn't true, that he doesn't have sort of larger contextual information, then I look at this record and I think, yeah, he didn't really ask much in terms of the questions that our case law talks about asking. So what do I do with what I think probably was true but isn't actually in the record? Well, I think there is some of that in the record. The court did talk to counsel about that and made sure he had good communication. And he explained to the defendant that this was an attorney who had appeared before the court many times and was very capable and qualified. Right. But that's – I mean, as your friend across the aisle said, the inquiry isn't, is this lawyer going to do a good job for you at this point given the nature of the complaint? And I think Judge Windmill does say, this is a great attorney. He's going to do – he's very competent. He's going to do a good job for you. But that wasn't the issue. I think the court's concern can be alleviated because the judge – the court learned the exact reason why the defendant requested new counsel, and that's because the defendant told him directly. The defendant, and I quote, stated, this is the reason why I'm asking for another attorney, because they are leaving it up to my probation officer every time, and he has continued asking to keep me on probation. So the defendant told the court exactly what the problem was. And I disagree that the court wasn't listening. The court talked to the attorney, and then he gave the defendant an opportunity and told him, look, you've got to show me some irreconcilable conflict, so what is that? And the defendant talked for a very short period of time. That's on the excerpts of Record 43. And it wasn't the court who skipped to the end and started talking about supervised release. It was the defendant. He first started talking – making some comments that really sort of lacked in substance. It's been a long road. I'm tired. I'm exhausted. But pretty quickly, he came to the point, I've been back here numerous times on violations. And so it was the court who was listening to what the defendant said and then reacting to that. So that's what caused the court – the court didn't get out of itself. It was the defendant who raised that concern. This experienced district court was listening and knew what the problem was at that point. And so that's when the court pivoted and kind of moved down further into the inquiry related to the supervised release violations. So the extent of the inquiry was sufficient in this case. And the court learned that there really was not an extensive and irreconcilable conflict, which is what's required. Mere dissatisfaction with counsel is not enough. And so the court, again, knew that the defendant and his attorney had communicated numerous times, agreed on a course of action. And really the situation here was the defendant was just not happy. When he talked about questions that he asked and there was no answers, again, it was the example that he said, what's going on with this case or what can we do different? And the defendant couldn't tell him. So the defendant kept violating and kept getting put back on supervised release and he wanted a different result. It wasn't that there was some lack of trust or communication between his attorney. He just thought maybe a different attorney will have a different result, even though it was the defendant's actions that kept causing this cycle. And so, again, it just comes back to he was unhappy with the consequences of his actions and with the situation that he was in, there was nothing the attorney could have done differently. In fact, this case is similar to the Mendez-Sanchez case we cited where the court found that even if the court was going to appoint a new counsel, this problem would come up again and again because the new counsel would also argue as his current counsel to keep him off supervised release. But ultimately, it's up to the court. Well, I mean, I think, again, your friend across the aisle makes a decent point. I mean, I used to be a trial judge. I've seen these kinds of cases. And you do have people who just are never satisfied with any lawyer. And so it's sort of a serial, I want a new lawyer, I want a new lawyer, I want a new lawyer. That's not this record. Yeah, that's true. But even the court still conducted an adequate inquiry and tried to get to the bottom of this, and the defendant really couldn't provide any lack of—excuse me, the defendant couldn't provide any substantive information about why he needed a new attorney. In fact, you know, the defendant's own statements show that this was not an irreconcilable difference. As the court talked this through with the defendant at the end, he said, there's not an irreconcilable difference here. I'm not going to change your counsel. And the defendant's statement was, if you think that's best, I'm okay. I'm ready to go. So that is not an irreconcilable difference. That's just someone who maybe thinks he's dissatisfied or maybe a new attorney might bring a different result. So this was a very minor conflict. The timing is not a significant factor in this case. There was some delay that was caused, and there would have been additional delay, but that was minor and it was not a significant factor. But the McKenna case says that even a timely motion that's filed, a timely that it won't result in delay, is not going to—the courts within its discretion deny that if it's conducted an inquiry and there is simply not a basis for new counsel. So all three factors weigh against appointing new counsel. The district court was correct in doing so. The defendant had his opportunities and couldn't provide any real significant issues, certainly not an irreconcilable conflict. I'm going to move to the second issue the defendant raised, and that's whether the district court considered punishment as a factor. And, of course, the district court may not punish the defendant for the underlying criminal conduct of the violations, but this court has recognized that the court can sanction the defendant for a breach of the court's trust. And this court's also described that that difference between the two is very subtle. And that's what's happening here. The defendant wants this court to speculate and assume that the district court considered punishment when the court didn't say that it was considering punishment. They take issue with a single word that the court said that it was going to make the sentence painful. But when considered in context, that was the district court talking about imposing a sanction for a breach of the court's trust. The court said other things such as he was going to hold, this was part of holding the defendant accountable. And so this isn't a situation like McBell where the district court said it was going to consider those factors and he thought that it could consider those factors, expressly said that's what it was considering. This isn't a situation like Simtob where the district court, the defendant had been found guilty of a new crime and the district court was focused on that underlying conduct and that new crime and how serious that offense was. This is a different situation. This was the district court, this was the fourth violation of the defendant. He violated in short order. It was sort of willful defiance. And so the court, when it said it was going to make things more painful, was not saying that it was considering punishment. There's just not enough in the record for this court to assume that that's what the district court intended. Well, shifting to the substantive reasonableness part of the revocation sentence, everything that you're just describing causes one to wonder why on this fourth violation supervised release is given again. So is there anything in our case law that suggests that we can find substantive unreasonableness based on sort of imposing supervised release when the record establishes it's not going to do anything, it's not going to serve its purposes? Well, I think that that was certainly a concern and the court struggled with that, right? That's why the court told the defendant at that earlier hearing, in my 28 years sitting on the federal bench, I don't think I've ever imposed supervised release on this many occasions. The probation officer's report also said that it was a rare occurrence. And the government, myself as counsel arguing, suggested to the court that that was a difficult call for the court. But it's certainly within the maximum sentence imposed. It wasn't unlawful under any statute or law. And so it just falls back to the 3583 incorporates those 3553A factors. So when would imposing supervised release be unreasonable, right? Because this is a, I mean, yeah, this causes you to scratch your head and go, why are we still doing this? He's showing over and over and over again he isn't going to comply with supervised release. So is it even, is there a point where you would say it's unreasonable to continue doing this, District Court? I think that there is a point. And I think that we're probably closely approaching that. I don't know that you can put an exact finger on exactly when this is the point. But in this situation, the defendant had been on supervised release total less than 16 months for all combined four. He was still a danger to the community with a significant criminal history, 21 criminal history points, continuing to use drugs and willful defiance of following the court's orders. He violated, in this instance, just within days of being on supervised release. And he was absconded 18 days. So this was just him basically coming out saying willful defiance. I'm not going to abide by this court's conditions. And so in that situation, to protect the community and to provide a sanction, I think that both the 24 months of imprisonment and the one year of supervised release was reasonable under the circumstances and certainly not an abuse of discretion. So for those reasons, the government wanted to ask this court to affirm the district court. Thank you. Thank you, counsel. Rebuttal. The focus here is on the attorney's, not on the attorney's willingness to fix the problem, but on the relationship itself. Not on litigation tactics, but on trust and communication. And in order to ascertain the contours of that dynamic, the court must address each individual defendant as an individual person, regardless of the reputation that the attorney brings into the courtroom. There are no magic words that a defendant can say or should say in order to establish that breakdown. But if there were, Mr. Martinez used them. He said there's a lack of communication and questions without answers. And sometimes actions speak louder than words. Here, Mr. Martinez took action by actively calling other attorneys to answer his questions. Thank you. Thank you, counsel. Thank you to both counsel for your helpful arguments.
judges: RAWLINSON, FORREST, SUNG